ALLAN C. DURBUROW, JR., ET AL.
v.
WILLIAM C. NIEHOFF ET AL.

37  403
57  290

*Principal and Surety—Bond—Action on—Parties—Defaulting Treasurer of Club.*

1. A bond to a class of persons is valid.

2. A man can not be both plaintiff and defendant in the same action at law, whether others be associated with him or not.

3. Equity has jurisdiction of controversies where the principles of law by which the ordinary courts are guided give a right, but the powers of those courts are not sufficient to afford a complete remedy, or their modes of procedure are inadequate.

4. Where the parties composing a certain body are numerous, and a given suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and the rest.

[Opinion filed December 11, 1890.]

IN ERROR to the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

The following bill was filed:

"In the Circuit Court of Cook County.

State of Illinois, ⎰
County of Cook. ⎱ ss.

To the Honorable the Judges of the Circuit Court of Cook
County, in the State of Illinois, in chancery sitting :

Your orators, Allan C. Durburow, Jr., Samuel B. Chase,
James C. Strain, John F. McGuire, Benjamin F. Jenkins,
Thomas L. Lavender, Michael C. McDonald, James H. Farrell
and Jonas Hutchinson, also of Chicago, Illinois, respectfully
represent and show unto your honors, that before and on the
12th day of January, A. D. 1889, and thereafter, the Wah-
nahton Association was a voluntary political association having
a large number of members, citizens of Cook county, Illinois,
organized and associated together in the interest and for the
promotion of good government, local, state and national, and
that on as well as before and after said 12th day of January,
A. D. 1889, your orators, Allan C. Durburow, Jr., Samuel B.
Chase, James C. Strain, John F. McGuire, Benjamin F. Jen-
kins, Thomas Lavender, Michael C. McDonald, James H.
Farrell and Jonas Hutchinson, were directors of said the
Wahnahton Association, of Chicago, Illinois, and were then,
together with William Niehoff, hereinafter mentioned, the
directors designated and intended as " The Directors of the
Wahnahton Association, of Chicago, Illinois," in that certain
bond hereinafter referred to and set forth.

Your orators further represent that William Niehoff, who
is hereinafter made one of the defendants to this bill, had
been on January 5, A. D. 1889, duly elected treasurer, and
was, on January 12, 1889, and for a long time thereafter, treas-
urer of said Wahnahton Association, and that the term of
office for which he was so elected and acted as treasurer was
one year from the aforesaid date of his said election, and until
his successor in said office should be duly elected and qualified.

Your orators further allege that by the constitution, rules
and regulations of the said association, the said William C.
Niehoff, as treasurer, aforesaid, was required to give, and on
the 12th day of January, A. D. 1890, did give as treasurer,
aforesaid, a bond with two sureties, in the sum of $5,000, in
words and figures following :

"Know all men by these presents : That William C. Nie-
hoff, as principal, and Conrad L. Niehoff and Jacob Becker as
sureties, all of the city of Chicago, of the county of Cook

and State of Illinois, are held and firmly bound unto the directors of the Wahnahton Association, of Chicago, Illinois, in the sum of five thousand ($5,000) dollars, good and lawful money of the United States of America, to be paid to the said Wahnahton Association, or to its certain attorney, executors, administrators or assigns; for which payment well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

" Sealed with our seals and dated this twelfth (12th) day of January, in the year of our Lord, one thousand eight hundred and eighty-nine.

" The condition of this obligation is such, that if the aforesaid William C. Niehoff, who has been duly elected treasurer of said Wahnahton Association, shall, at the expiration of his term of office, or when his successor has been duly elected and qualified, turn over to his said successor all moneys, books and papers, or valuables, belonging to said association, then this obligation to be void, otherwise to remain in full force and virtue.

" WILLIAM C. NIEHOFF,  [SEAL]

" CONRAD L. NIEHOFF,  [SEAL]

" JACOB BECKER,  [SEAL]

" Sealed and delivered in the presence of

" F. J. NIEHOFF,  [SEAL]

Notary Public."

Which bond was signed and sealed by the said William C. Niehoff, as principal, and by Conrad L. Niehoff and Jacob Becker, as sureties, all of whom are hereinafter made defendants to this bill, and was thereupon duly delivered to the said association and to " The Directors of the Wahnahton Association, of Chicago, Illinois," which then included, under said designation, your orators, Allan C. Durburow, Jr., Samuel B. Chase, James C. Strain, John F. McGuire, Benjamin F. Jenkins, Thomas L. Lavender, Michael C. McDonald, James H. Farrell and Jonas Hutchinson, and also said William C. Niehoff, who was then and thereafter throughout his said term of office and until his successor was elected and qualified, also one of the directors of the said association.

Your orators further allege that after the delivery and acceptance of said bond, and during the said William C. Niehoff's said term of office as treasurer, prior to the election and qualification of his successor to said office, and prior to March 13, 1890, besides books and papers and other valuables belonging to said association, a large amount of money also belonging to said association, whereof the sum of $3,861.03 of cash money so came to the hands of the said William C. Niehoff as treasurer, during his said term of office, after the execution of said bond and its said delivery, which remained in his hands unaccounted for at the expiration of his said term of office as treasurer aforesaid, and so remained at and after the election and qualification of ——— Bunker, who was elected and qualified as such successor shortly prior to March 13, 1890.

And your orators allege that since the expiration of the said William C. Niehoff's said term of office, and since the election and qualification of his said successor, and prior to and since the 13th day of March, A. D. 1890, your orators and the said ——— Bunker, the said successor of said William C. Niehoff in said office as treasurer aforesaid, have at divers times requested the said William C. Niehoff to pay and turn over to his said successor, ——— Bunker, or to your orators, or some of them, for the use and benefit of said Wahnahton Association, the said sum of $3,861.03, so belonging to said association, but the said William C. Niehoff, although on and since March 13, 1890, he has admitted in writing his duty and obligation so to pay over the same, has never done so, and has not paid over any part thereof, and has declared to your orators his inability so to do; and at divers times since the said 13th day of March, A. D. 1890, and since the admission on that day of the said William C. Niehoff, of his duty and obligation so to pay over the said money, your orators have called upon both the principal and the said sureties, and particularly the said Conrad L. Niehoff, to perform the conditions of the said treasurer's bond of the said William C. Niehoff, and to pay over to the obligees therein named the said sum of $3,861.03 aforesaid, but the said sureties have not, nor has either of them, at any time hitherto, paid over the said

sum of money or any part thereof to your orators or to the said ———— Bunker, who is now, and since the said 13th day of March, 1890, has at all times been, the treasurer of the said association.

Your orators further allege that, at the time of the execution and delivery of the bond aforesaid and until the expiration of the said term of office of the said William C. Niehoff as treasurer, and until the election and qualification of his successor, ———— Bunker, the said William C. Niehoff was himself one of the directors of the said Wahnahton Association, and included in and under the designation of "The Directors of the Wahnahton Association of Chicago, Illinois," in said bond named as obligees, by reason whereof your orators allege the said bond can not be enforced against the said William C. Niehoff, Conrad L. Niehoff and Jacob Becker by an action at common law.

And your orators allege that the said William C. Niehoff could not and would not be or become a co-plaintiff in any action at common law upon said bond, and can not and will not become co-complainant in this bill to enforce the collection of said bond against either him or his said sureties therein; but nevertheless your orators allege and insist that they have equitable rights in the premises under said bond to have and recover the said sum of $3,861.03, together with interest thereon, as against both the said principal and the said sureties, which rights are only cognizable and relievable in a court of equity, and that your orators are without any adequate and sufficient remedy in a court of law, and that each of your orators, the above named and designated several directors of said association, were, at the time of the execution and delivery of said bond, and ever since have been and still are members of the said association, as well as directors thereof, and that the remaining members thereof, constituting the said Wahnahton Association, number several thousand persons, and that it is impracticable to make them all co-complainants herein, and that your orators, the said enumerated directors and members, file this bill on their own behalf and on behalf of all the members constituting the said Wahnahton Association.

Wherefore, your orators pray that the said William C. Niehoff, Conrad L. Niehoff and Jacob Becker may be made defendants hereto, and may be duly summoned, and may make answer to the matters and things herein alleged, but not under oath, the necessity of their answer, and of the answer of either of them under oath being hereby waived, and that upon the hearing of this case upon the merits, a decree may be entered against them, the said William C. Niehoff, Conrad L. Niehoff and Jacob Becker, and in favor of your orators, for the said sum of $3,861.03, together with legal interest thereon from and after the thirteenth day of March, 1890, and for such other and further or different relief in the premises as the nature of your orator's case shall require, and to your honors shall seem meet.

And your orators will ever pray, etc."

General and special demurrer of William C. Niehoff to the bill as amended.

Decree sustaining demurrer of Conrad L. Niehoff and Jacob Becker, and dismissing the amended bill as to them for want of equity; also overruling demurrer of William C. Niehoff, and he abiding by his demurrer and refusing to answer further, it is decreed that he pay within twenty days to the complainants in the bill as amended, naming them, as directors of, for and on behalf of and for the use of the members of the Wahnahton Association of Chicago, Illinois, in said amended bill mentioned, the sum of $3,861.03, and that in default thereof execution issue therefor.

This case is brought to this court by writ of error, and the sustaining of the said demurrer assigned for error.

Messrs. BARNUM, EVANS & BARNUM, for plaintiffs in error.

The bill in substance alleges that the bond was made to said named complainants and William C. Niehoff by the name and style of "Directors of the Wahnahton Association." They, and they alone, have the legal interest in the contract, the legal title under the bond; therefore, they alone can sue upon it at law.

"The action must be brought," says Chitty, "in the name of the party in whom the legal interest in such contract was

vested." "The right of action at law has been wisely vested solely in the party having the strict legal title and interest in exclusion of the mere equitable claim." 1 Chit. on Plead., *2, *3.

And this, too, notwithstanding "the equitable right embrace the most extensive, or even the exclusive interest in the benefit to be derived from the contract or subject-matter of the litigation." Id. *p. 3.

The bond in suit is under the seals of all the signers, and in such case the common law, followed by the courts of this State, is thus laid down by Chitty:

"If a bond be given to ' A' conditioned for the payment of money to him for the *use* or *benefit* of ' B,' or conditioned to pay the money to 'B,' the action must be brought in the name of ' A,' and ' B ' can not sue for or release the demand. In such case ' A ' is evidently a trustee, and the obligatory part of the instrument, and the acknowledgment of legal responsibility are to him." 1 Chitty on Pl., * 3, and ref's.

To the same effect, Gantzert v. Hoge, 73 Ill. 30; Sandowsky v. Neal, 2 Ill. App. 624; Scott v. The People, 2 Ill. App. 645.

The parties designated as "directors" in this bond, that is, the complainants and William C. Niehoff, are like A in the case last stated, evidently trustees, and the case stands just as if they had been called trustees in the bond instead of directors. It is vain to argue, as was done below, that associated individuals, unincorporated, can not have directors. As well argue that they can not have trustees.

That the directors in this case, including William C. Niehoff, instead of all the members of the association, would be the proper plaintiffs in an action at law upon this bond, is clearly shown by Metcalf v. Bruin, 12 East, 400.

This very instructive case holds that "A bond given to trustees to secure the faithful services of a clerk to the Globe Insurance Company, who were no corporation, may be put in suit by the trustees for a breach of faithful service by the clerk, committed at any time during his continuance in the service of the actual existing body of persons, carrying on the same business under the same name, notwithstanding any intermediate change of the original holders of the shares,

by death or transfer; and the intervention of the trustees removed all legal and technical difficulties to such a contract made with, or suit instituted by the company themselves as a natural body." Lord Ellenborough said there was "no question as to the persons to whom the obligation was made" (p. 402); "no difficulty in suing upon it in their own names" (405); "nothing illegal in such a contract" (407); "a contract with the body itself would not have done, but a contract with the trustees, for the benefit of the body, gets rid of the difficulty" (406). LeBlanc, Justice, recognizes that "the trustees" were "the obligees of the bond in the place of the company" (408). Metcalf v. Bruin, 12 East, 400–409.

The authorities already referred to establish that William C. Niehoff would be an indispensable plaintiff at law, as one of the directors, and he would be an equally indispensable plaintiff as one of the Wahnahtons, if such a suit could be brought on the bond by all the Wahnahton members, notwithstanding they are not obligees. In either case, William C. Niehoff would be both plaintiff and defendant, and this the common law will not tolerate for a moment.

"The same person can not be both plaintiff and defendant" (either solely or with others).

"It is clear, upon the acknowledged principles of pleading in the common law, that a party can not at once be a plaintiff and a defendant in the same action; or in other words, sue himself either alone or in conjunction with others." Dicey on Parties (Truman's Notes), 79, and ref's; Story on Partnership, Sec. 221; Jones v. Yates, 9 Barn. & Cress. 537; Parsons on Partnership, 288, and ref's (Chap. 8, Sec. 3).

But it will doubtless be contended that William C. Niehoff is no longer a director, and need not be one of the plaintiffs at law, and that the other directors only need be plaintiffs. This position is untenable. The bond was given, and so the bill alleges, to ten specified individuals, William C. Niehoff being one. Those ten became and still remain the obligees.

The term "directors" in the bond was mere "*descriptio personarum* (like "trustees" in the case in 12 East), pointing out who the ten individual obligees were. That once ascer-

tained, remains unalterable.   The obligees were not one set of men at one time and another set at another.   William C. Niehoff is just as much an obligee as he ever was, and would be an unexceptionable co-plaintiff but for the fact that he would have to sue himself.   This, the bill alleges, he will not do; and the law will not let him do it, not because he is not still the obligee, but precisely because he *is* the obligee and also obligor.

Neither the death of William C. Niehoff, or the demise or abdication of his directorship, could legalize the suit if one were subsequently brought by his co-obligees on a bond in which he was both obligor and obligee; because, as no suit at law could be brought on such a bond in his lifetime, or in the life of his directorship, none can be brought afterward. This doctrine is clearly laid down in all the books:

Dicey says:   " Where two or more persons must join as plaintiffs in an action, they can not bring any action in which it would be necessary to make one of them defendants.   So, where an individual is a common partner in two houses of trade, no action can be maintained by the one house against the other upon any transactions which take place between them while such individual is a common partner; and that whether the action be brought during his lifetime or after his death.   Dicey on Parties, 75–80, and ref's.

" The rule" says Parsons, " is applied with equal strictness after the death of the partner common to both firms, or of any other partner, and after the dissolution of the partnership in any way."   " The foundation of the rule is, that a party can not sue himself, because he can not contract with himself, and therefore there never was a valid contract *at law* between these two firms.   Parsons on Partnership, 290; see, also, 1 Story's Eq. Jur., Sec. 679, p. 690.

This reasoning is obviously just as applicable to other cases where parties undertake to contract with themselves, as to contracts between two firms having a common partner.   It is not, in other words, a rule confined to the law of partnership. "A, B and C can no more sue A, D and E than A can sue A," says Parsons (289), and this applies to suits on all contracts, whether between firms or otherwise.

Parsons says (290) that " the entire sufficiency of equity in such cases has doubtless prevented courts or legislators from annulling or modifying this rule " (preventing a party from being both plaintiff and defendant at law).

The remedy in equity is also recognized in note 1 and references, Dicey on Parties, 79, and in Jones v. Yates, 9 Barn. & Cress. 539, and in 1 Story's Eq. Jur., p. 690, Secs. 679, 680, 681.

Courts of equity, in all such cases, look behind the form of the transactions to their substance, and treat the different firms for the purposes of substantial justice, exactly as if they were composed of strangers, or were in fact, corporated companies." Equity Juris., Secs. 679, 680.

Haven v. Wakefield, 39 Ill. 519, furnishes another illustration of the jurisdiction of equity over cases where parties have no remedy at law, upon contracts in which they are at once obligor and obligee. The contract in that case was a lease. " In such cases," says the court, "*to prevent a failure of justice*, equity takes jurisdiction and makes compensation for any injury that may have been sustained." 39 Ill. 519.

In McElhanon v. McElhanon, 63 Ill. 457, it was held : " The rule that a party can not be both plaintiff and defendant in an action—that it is an answer to an action that a party is legally interested on each side of the question, will operate, although a party appears on one side in his personal, and on the other, in his official character."

In Church v. First National Bank, 87 Ill. 68, it was held : " If a bank pays out the money of the partnership to one of the partners upon his check in fraud of the rights of the other partner, an action at law can not be maintained in the firm name against the bank. Resort must be had to a court of equity for the relief of those partners claiming to be injured." There was absolutely no remedy at law, but an acknowledged wrong which equity alone could redress. The same principle governs the case at bar, and the authorities there cited are applicable. In support of equity jurisdiction over this cause we further cite: Bosanquet v. Ray, 6 Taunt. 695; 2 Ohio St. R. 30; 11 Me. 198; 13 Ga. 368.

All proper and necessary parties are before the court. They need not be all individually named.

Complainants allege that they "filed this bill on their own behalf and on behalf of all the members constituting the Wahnahton Association" numbering "several thousand persons." The general rule is conceded that all persons materially interested in the subject-matter ought to be made parties to the suit. But one of the established exceptions to the rule is stated by Mr. Justice Story as follows (Equity Pleadings, Sec. 107):

"The second class of cases constituting an exception to the general rule is, where the parties form a voluntary association for public or private purposes, and those who sue or defend, may fairly be presumed to represent the rights and interests of the whole. In cases of this sort the persons interested are commonly numerous, and any attempt to unite them all in the suit would be, even if practicable, exceedingly inconvenient, and would subject the proceedings to the danger of perpetual abatements and other impediments, arising from intermediate deaths or other accidents, or changes of interest. Under such circumstances, as there is a privity of interest, the court will allow a bill to be brought by some of the parties on behalf of themselves and all the others, taking care that there shall be a due representation of all substantial interests before the court. And such a bill must be brought on behalf of all the parties in interest, for if it be brought for the plaintiffs alone it will not be sustained by the court for the want of proper parties."

And see also same author, sections 108 and 109, for illustrations entirely parallel with the case now before the court.

Section 95 of the same author lays it down, "that the mere fact of numerousness" is enough to dispense with a suit in the names of all the parties. This familiar doctrine has been repeatedly sanctioned by the Supreme Court. See Whitney v. Mayo, 15 Ill. 255; Martin v. Dryden, 1 Gilm. 209; Ryan v. Lynch, 68 Ill. 160; Land Co. v. Peck, 112 Ill. 435, etc.

Our bill has been framed within the exception. It contains the allegation wanting in Whitney v. Mayo, 15 Ill. 255, when

the Supreme Court said of that bill that "it should have been filed for and on behalf of all the other communicant members, or some grounds shown why they could not be made complainants in this way." Remarks in that and other cases relating to defendants must not be misapplied to complainants.

In Martin v. Dryden, *supra*, the bill like ours was found within the exception and held sufficient. It was filed on behalf of complainants themselves and the other members of the association. (See 1 Gilman, 206, bottom, and p. 210.)

Messrs. CAMERON & HUGHES, for the defendants in error.

MORAN, P. J. The "Directors of the Wahnahton Association of Chicago" are a class of persons designated by that description, the persons composing which class are ascertainable, and are fully ascertained and identified by the allegations of the bill. A bond or deed to a class of persons is valid, for "a deed may be made to persons as well by a description as *nominatum*, for after all names are but a more precise description." Justice v. Armstrong, 3 Dev. L. 284.

If one gives his bond to another and himself it can not be sued at law, for a man can not be both plaintiff and defendant in the same action at law, whether others be associated with him or not. But the defect in the instrument does not render it void. It is a *technical* and not *substantial* defect. "It applies to the remedy and not to the right; and may be obviated by resorting to a court of equity, in which a man can be both plaintiff and defendant in the same suit." Booth v. Kinsey, 8 Gratt. 560; Batchelder v. Wendelell, 36 N. H. 204; Jones v. Yates, 9 Barn. & Cress. 537; Dicey on Parties, 79.

If one of the obligors was not also an obligee in this bond, the bond would be a valid instrument at law, and the obligees might well sue, having the legal title to the money recoverable on the bond, though the real beneficiaries are the members of the voluntary association. Metcalf v. Bruin, 12 East, 400. But because of the technical objection at law, there would be a failure of justice unless equity would enforce the obligation.

Says Mitford in Eq. Pl. 111: "The jurisdiction of a court

of equity is to be exercised (1) where the principles of law by which the ordinary courts are guided, give a right; but the powers of those courts are not sufficient to afford a complete remedy, *or their modes of proceeding are inadequate to the purpose.*" See, also, 1 Story Eq. Jur., Secs. 679, 80–81; Haven v. Wakefield, 39 Ill. 519.

So far, therefore, as the court below, in sustaining the demurrer, proceeded on the ground assigned, that there was a remedy at law and therefore equity had no jurisdiction, the view was erroneous.

The very case is presented where there can be no remedy at law, and that, if there is a right, is an adequate ground on which to ask the aid of a court of equity. Nor do we think the objection that equity will not enforce a penalty will avail appellees as a defense. The bond is a joint and several undertaking, and upon the faith of it, one of the contracting parties obtained the money sought to be recovered. The contract is that William C. Niehoff shall, at the expiration of his term, turn over to his successor all moneys belonging to the association.

This is the contract of all the obligors, and equity will in its own method enforce it, not by giving judgment for the penalty of the bond, but by decreeing the payment of the money received. Equity regards not the form, but the substance.

It is strenuously urged, however, that the proper parties are not before the court; that all the members of this association must be made parties complainant. True, the general rule in equity is, that all parties in interest should be made parties to the suit, either as complainants or as defendants, but there are well established exceptions to this rule.

Here the parties who file the bill are in fact under the particular form of organization adopted by this voluntary association, *representatives* of all the members. and of the association.

In Taylor v. Salmon, 4 Mylne & Craig, 134, the bill was filed by the directors of a joint stock company, on behalf of themselves and all other stockholders seeking to have the

benefit of an agreement entered into by an agent of the company. There was a demurrer for want of parties, and the Lord Chancellor said: "That where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others, is established."

The same rule was applied in Wallworth v. Holt, 4 Mylne & Craig, 619, and in the notes to this last mentioned case, a case decided by Lord Langdale is cited, where one member of a club filed a bill on behalf of himself and other members, against two of the members, to recover money of the club and for other relief. There was a demurrer for want of parties. The demurrer was overruled. The court said the bill sought to recover the particular assets, " not for the purpose of distribution by or through the means of this suit, but for the purpose of bringing them within the control of the governing body of the partnership, in order that they may be applied under their control according to the rights of the parties. * . * * The plaintiff and all the other members except these two defendants must have an interest in having the money, which the demurrer admits to be in the defendants' possession, brought within the control of the club; that is the common interest of all. How this money when it is brought within the control of the club ought to be applied, is another matter. To ask to recover it and place it within the control of the club, and leave it there subject to litigation, is asking no more than was done in the case of Wallworth v. Holt, where matters were thus left. If, then, it is for the common benefit of all, except the two defendants, that those funds should be recovered, why should it not be done?" Richardson v. Hastings, 7 Beav. 323.

Story's Eq. Pleading, Sec. 107, mentions as an exception to the general rule, cases " where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole. In cases of this sort the persons interested are commonly numerous, and any attempt to unite them all in the suit would be, even if practicable, exceedingly

inconvenient. * * * Under such circumstances as there is a privity of interest, the court will allow a bill to be brought by some of the parties on behalf of themselves and all the others, taking care that there shall be a due representation of all substantial interests before the court. And such a bill must be brought on behalf of all the parties in interest, for if it be brought for the plaintiff alone, it will not be sustained by the court for the want of proper parties." See Fen v. Craig, 3 Y. & Coll. (Exch.) 216; Manderville v. Riggs, 2 Peters, 483; Barb. on Parties, 501.

The cases in this State recognize this general rule. Whitney v. Mayo, 15 Ill. 255.

The allegations of the bill bring this case within the letter and spirit of the rule, and we must therefore hold that the complainants may maintain the bill without making the other members of the association parties complainant or defendant.

So much of the decree of the court below as overruled the demurrer of William C. Niehoff and decreed the payment of the money found due from him, will be affirmed, and so much of the decree as sustained the demurrers of Conrad L. Niehoff and Jacob Becker and dismissed the bill as to them, will be reversed and the case remanded to the Circuit Court with directions to overrule the demurrers of the said last named defendants and require them to answer the bill.

*Affirmed in part and reversed in part, and remanded.*